# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Mohamed A. Mahmoud,

                  Plaintiff

      v.

Steve Sisolak, et al.,

               Defendants

Case No. 2:22-cv-00368-JAD-VCF

**Order Screening Complaint and Resolving Pending Motions**

(ECF Nos. 4, 6, 18, 22, 23)

Plaintiff Mohamed Mahmoud brings this civil-rights action under 42 U.S.C. § 1983, claiming that his First and Eighth Amendment rights were violated when staff at Southern Desert Correctional Center (SDCC) used excessive force against him and retaliated when he threatened to file a grievance.[1] Because Mahmoud applies to proceed *in forma pauperis* (IFP),[2] I screen his complaint under 28 U.S.C. § 1915A. But first I address outstanding issues about the filing fee and Mahmoud's motion to compel defendants to produce documents for his application to proceed IFP.[3]

Upon screening, I find that Mahmoud has pled colorable First Amendment retaliation and Eighth Amendment excessive-force claims, so I allow those claims to proceed. But I dismiss the rest of Mahmoud's claims without prejudice. I deny Mahmoud's motion for the court to appoint him a free attorney because he has demonstrated that he can articulate his claims and arguments.[4] And because I find that Mahmoud has not met the standard for the extraordinary remedy of a restraining order or a preliminary injunction, I deny his motions for that relief.[5]

## I.  Filing fee

Magistrate Judge Ferenbach found that Mahmoud's application to proceed IFP was incomplete—missing the required financial certificate and six-month account statement—so he

---

[1] ECF No. 1-1.

[2] ECF No. 1.

[3] ECF No. 6.

[4] ECF No. 4.

[5] ECF Nos. 18, 22, 23.

1  denied the application without prejudice to Mahmoud's ability to file a new application and

2  supporting documents by May 16, 2022.[6]  Mahmoud responded by moving the court to compel

3  defendants to produce his financial certificate and six-month account statement, arguing that he

4  sought the documents on February 17 but the law librarian never produced them or responded to

5  his kite about the delay.[7]  Mahmoud also appealed Judge Ferenbach's order to the Ninth Circuit.[8]

6  The Ninth Circuit has set a time schedule for Mahmoud's appeal.[9]

7        I suspect that Mahmoud's appeal is premature and that defect is not curable.[10]  So it is

8  likely that this court has not been divested of jurisdiction over the matter of Mahmoud's

9  application to proceed IFP.[11]  But I have determined to temporarily defer ruling on the matter of

10  the filing fee, so I need not and do not resolve that jurisdictional issue now.

11  **II.    Motion to compel**

12        Mahmoud moves the court to compel defendants to produce the financial certificate and

13  six-month account statement that he needs to apply to proceed IFP.[12]  Mahmoud argues that he

14  sought the documents from prison officials on February 17, 2022, but never received them, nor

15  did anyone respond to his kite on March 14 asking for a status update.[13]  But 20 days later,

16  Mahmoud moved to proceed IFP on appeal with a completed financial certificate dated March 15

17  and a six-month account statement of the same date.[14]  A hand-written notation on the financial

18  _____

19  [6] ECF No. 5.

    [7] ECF No. 6.

20  [8] ECF No. 7.

21  [9] ECF No. 8.

22  [10] *See Tripati v. Rison*, 847 F.2d 548 (9th Cir. 1988) (the Ninth Circuit concluded that it lacked jurisdiction to review a magistrate judge's orders denying applications to proceed in forma pauperis because the motions had not been referred to the magistrate judge by a district judge

23  and the parties had not consented to a magistrate judge deciding the motions); *Serine v. Peterson*, 989 F.2d 371, 372–73 (9th Cir. 1993) (dismissing as premature appeal from a magistrate judge's

24  order that was not a final judgment).

25  [11] *Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993) (explaining that the transfer of jurisdiction "from the district court to the court of appeals is not effected . . . if a

26  litigant files a notice of appeal from an unappealable order").

    [12] ECF No. 6.

27  [13] *Id.* at 1.

28  [14] ECF No. 15 at 5–12.

1   certificate reads "received back on 3/25/22."[15]  Mahmoud recently refiled that motion with the

2   same supporting documents.[16]  Mahmoud has not filed a new application to proceed IFP in this

3   action, only on appeal.  But in any event, Mahmoud's filings show that he has received the

4   financial documents that are the subject of his motion to compel.  So I deny as moot his motion

5   for that relief.

6   **III.  Screening standard**

7        Federal courts must conduct a preliminary screening in any case in which a prisoner

8   seeks redress from a governmental entity or an officer or employee of a governmental entity.[17]

9   In its review, the court must identify any cognizable claims and dismiss any claims that are

10   frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek

11   monetary relief from a defendant who is immune from such relief.[18]  All or part of the complaint

12   may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This

13   includes claims based on legal conclusions that are untenable, like claims against defendants who

14   are immune from suit or claims of infringement of a legal interest which clearly does not exist, as

15   well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[19]

16        Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot

17   prove any set of facts in support of the claim that would entitle him or her to relief.[20]  In making

18   this determination, the court takes all allegations of material fact as true and construes them in

19   the light most favorable to the plaintiff.[21]  Allegations of a *pro se* complainant are held to less

20   stringent standards than formal pleadings drafted by lawyers[22] but a plaintiff must provide more

---

[15] *Id.* at 5.

[16] ECF No. 24.

[17] *See* 28 U.S.C. § 1915A(a).

[18] *See* 28 U.S.C. § 1915A(b)(1)(2).

[19] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[20] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[21] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[22] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

than mere labels and conclusions.[23]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[24]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[25]

## IV.  Screening of complaint

Mahmoud sues Nevada Governor Steve Sisolak, Nevada Attorney General Aaron Ford, Nevada Department of Corrections (NDOC) Director Charles Daniels, SDCC Wardens Jerry Howell and William Hutchings, and six Doe defendants for events that allegedly occurred while he was incarcerated at SDCC.  Mahmoud brings one claim for relief and seeks injunctive, declaratory, and monetary relief.[26]

### A.  Factual allegations

Mahmoud alleges that he is diabetic and takes insulin to control his condition.[27]  While in the dining hall on February 16, 2022, Mahmoud asked John Doe 2 to unlock the bathroom because he needed to urinate.[28]  When John Doe 2 refused, Mahmoud got out his pen and legal paper and asked for the correctional officer's name.  John Doe 2 screamed at Mahmoud, ordered him to face the wall, cuffed him, and moved him to "K-gate" with the help of correctional officers Ashley and Summers.[29]

On the way to K-gate, John Doe 2 said "what are you looking at motherfucker" and punched Mahmoud in the face.[30]  Mahmoud got dizzy and fell to the concrete.  Mahmoud hurt

---

[23] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[25] *Id.*

[26] ECF No. 1-1 at 5–14.

[27] *Id.* at 10.

[28] *Id.* at 3.

[29] *Id.* at 8 (alleging that John Doe 4 is called "Summers" and John Doe 3 is called "Ashley").

[30] *Id.* at 3, 8.

1   his left knee.[31]  John Doe 2 then kicked Mahmoud in his left side and ordered him to "stand up,
2   bitch."[32]

3       Ashley then told Mahmoud that he was "nothing but a big slut" and Summers said they
4   were going to beat him now and the next time "will be worse."[33]  John Doe 2 said, "you like to
5   write grievances about us, this is what's gonna happen to you every time you try to write
6   grievances against one of us."[34]  K-gate officer Lara saw what John Doe 2, Summers, and
7   Ashley did to Mahmoud.[35]  When Mahmoud arrived at the gate, he asked Lara for an emergency
8   grievance to file.  Lara told him he didn't have any and Mahmoud would have to get one from
9   his unit.[36]

10      Defendants beat Mahmoud so bad that he couldn't stand up.[37]  Defendants called medical
11  staff who moved Mahmoud to the infirmary.[38]  Summers, Ashley, and John Doe 2 all told nurse
12  Albert that Mahmoud jumped on the floor and made up his claims of being battered.[39]
13  Mahmoud told Albert that he needed to urinate, Albert said that would have to wait until the
14  examination was done.[40]  Albert made Mahmoud wait for 30 minutes without examining him
15  and the pain in his bladder became so great that he urinated on himself.

16      Mahmoud showed Albert the "redness around [his] wrists" and "swelling on the front of
17  the right hand and . . . scratch on the back of it" and the "scratch" and scraped skin on his "right

18

19

---

20  [31] *Id.* at 8.
21  [32] *Id.* at 3, 8.
22  [33] *Id.* at 8.
23  [34] *Id.* at 8–9.
    [35] *Id.* at 11 (alleging that John Doe 5 is called "Laya").
24  [36] The thin allegations about emergency grievances do not state a colorable claim that any
25  defendant interfered with Mahmoud's ability to file grievances or access the courts in violation
    of the First Amendment.
26  [37] ECF No. 1-1 at 3, 9.
27  [38] *Id.* at 9.
    [39] *Id.* at 9, 12 (alleging that John Doe 6 is called "Albert").
28  [40] *Id.* at 12.

1   knee."[41]  Albert told Mahmoud that he was "fine."[42]  Mahmoud asked for a copy of the medical
2   report but Albert refused, saying that it is an "official document you don't get to get it."
3   Mahmoud had previously filed grievances about medical staff failing to get him X-rays, a blood
4   test, and cough medicine.[43]

5       Before the events of February 16, Mahmoud filed a kite complaining that Ashley gave
6   him a hard time and was disrespectful.[44]  In December 2021, Mahmoud filed a grievance about
7   Summers forcing him to stand outside of the infirmary for 20–30 minutes in "freezing air below
8   25" at 5:00 a.m. every morning to get his insulin.  Summers made all the diabetic prisoners wait
9   outside even though the infirmary had chairs and was empty.  Summers said, "I don't like to hear
10   you talking to each other that is why I keep you outside freezing."

11       Based on these allegations, Mahmoud contends that defendants violated his rights under
12   the First and Eighth Amendments.  I liberally construe the complaint as alleging claims based on
13   six different theories of liability: (1) First Amendment retaliation, (2) Eighth Amendment use of
14   excessive force, (3) Eighth Amendment deliberate medical indifference, (4) Eighth Amendment
15   unsafe prison conditions by exposure to cold, (5) Eighth Amendment unsafe prison conditions by
16   verbal harassment, and (6) supervisory liability for retaliation, deliberate indifference, and
17   excessive force.  I address each theory and any issues in turn.

18       **B.**    **Exhaustion of administrative remedies is mandatory.**

19       The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought
20   with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a
21   prisoner confined in any jail, prison, or other correctional facility until such administrative
22   remedies as are available are exhausted."[45]  The exhaustion requirement is mandatory and must
23   be completed before the prisoner files a lawsuit, not while the lawsuit is pending.[46]  And it

---

24   [41] *Id.* at 12–13.
25   [42] *Id.* at 13.
26   [43] *Id.* at 12.
     [44] *Id.* at 10.
27   [45] 42 U.S.C. § 1997e(a).
28   [46] *McKinney v. Carey*, 311 F.3d 1198, 1199–1201 (9th Cir. 2002).

applies regardless of the type of relief that a prisoner seeks and the type of relief that is available through available administrative remedies.[47] In fact, "[t]he only limit to [the PLRA's] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"[48]

The Supreme Court noted in *Ross v. Blake* that there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief.[49]  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."[50]  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."[51]  Third, a remedy is unavailable when it is shown that "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[52]

The Supreme Court explained in *Jones v. Bock* "that failure to exhaust is an affirmative defense under the PLRA," and prisoners "are not required to specially plead or demonstrate exhaustion in their complaints."[53]  But the Court also clarified that if it later comes to light that a plaintiff failed to exhaust his administrative remedies on claims raised in the complaint before filing suit, then the district court must dismiss those claims without prejudice to his ability to allege them in a new action once exhaustion is complete.[54]

---

[47] *Booth v. Churner*, 532 U.S. 731, 741 (2001).

[48] *Ross v. Blake*, 578 U.S. 632, 648 (2016).

[49] *Id.* at 643.

[50] *Id.*

[51] *Id.*

[52] *Id.* at 644.

[53] *Jones v. Bock*, 549 U.S. 199, 216 (2007).

[54] *Id.* at 219–21.

It appears from the allegations that nearly all the conduct Mahmoud complains about occurred on February 16, 2022.[55]  Mahmoud initiated this action 12 days later.[56]  It seems unlikely that Mahmoud was able to fully exhaust his administrative remedies during that short period.  If Mahmoud failed to exhaust his available administrative remedies as to any claim before filing this lawsuit, he should file a notice voluntarily dismissing those claims without prejudice to his ability to file them in a new action when he has complied with the exhaustion requirement.  Failure to do so could result in Mahmoud being required to pursue two lawsuits instead of just one, and thus having to pay the $350 fee for filing a civil action twice.

### C.    First Amendment retaliation

Prisoners have a First Amendment right to file prison grievances and pursue civil-rights litigation in the courts, "and to be free from retaliation for doing so."[57]  A retaliation claim in the prison context has five elements.[58]  "First, the plaintiff must allege that the retaliated-against conduct is protected."[59]  Filing or submitting a grievance, complaint, or lawsuit about prison conditions or alleged constitutional violations is protected conduct.[60]  The form that a prisoner's complaint takes—"even if verbal"—"is of no constitutional significance, and threats to sue fall within the purview of the constitutionally protected right to file grievances."[61]

Second, the plaintiff must allege that "the defendant took adverse action against [him]."[62] "'The mere threat of harm can be an adverse action.'"[63]  The third factor requires the plaintiff to

---

[55] The only exception is Mahmoud's allegation that Summers made him and other diabetic prisoners wait for up to 30 minutes outside in "freezing" weather to get insulin from the infirmary.  Mahmoud alleges that he filed a grievance about this conduct on December 15, 2021.

[56] *See generally* ECF No. 1 (filed on February 28, 2022).

[57] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[58] *Watison*, 668 F.3d at 1114.

[59] *Id.*

[60] *Entler v. Gregorie*, 872 F.3d at 1031, 1039 (9th Cir. 2017).

[61] *Id.*

[62] *Watison*, 668 F.3d at 1114.

[63] *Id.* (brackets and emphasis omitted) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009)).

"allege a causal connection between the adverse action and the protected conduct."[64]
Allegations "of a chronology of events from which retaliation can be inferred is sufficient" at the
screening stage.[65]

"Fourth, the plaintiff must allege that the 'official's acts would chill or silence a person of
ordinary firmness from future First Amendment activities.'"[66]  "A plaintiff who fails to allege a
chilling effect may still state a claim if he alleges [that] he suffered some other harm that is more
than minimal."[67]  The fact "[t]hat the retaliatory conduct did not chill the plaintiff from suing the
alleged retaliator does not defeat the retaliation claim" at the pleading stage.[68]

The fifth factor requires the plaintiff to allege "'that the prison authorities' retaliatory
action did not advance legitimate goals of the correctional institution.'"[69]  A plaintiff can
sufficiently plead "this element by alleging, in addition to a retaliatory motive, that the
defendant's actions were arbitrary or capricious or unnecessary to the maintenance of order in
the institution."[70]

Based on the allegations, Mahmoud engaged in protected activity: (1) he threatened to
file a grievance against John Doe 2 for prison conditions, (2) he filed a grievance against medical
staff for inadequate medical care, and (3) he filed a grievance against Summers for prison
conditions.  Defendants took adverse action against Mahmoud.  John Doe 2 beat him up while
Summers and Ashley acquiesced to that conduct and Lara stood by without helping.  And Albert
made Mahmoud wait to use the bathroom, which caused Mahmoud to soil himself.

Mahmoud connects the alleged conduct to his grievances as to some defendants but not
all.  John Doe 2, Ashley, and Summers engaged in their conduct after Mahmoud threatened to

---

[64] *Id.*

[65] *Id.*

[66] *Id.* (quoting *Robinson*, 408 F.3d at 568).

[67] *Id.* (brackets and quotation marks omitted) (quoting *Brodheim*, 584 F.3d at 1269 and *Robinson*, 408 F.3d at 568 n.11).

[68] *Id.*

[69] *Id.* (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

[70] *Id.* (internal quotation omitted).

1  file a grievance against John Doe 2.  John Doe 2 told Mahmoud that he was beating him because

2  he likes to file grievances.  Summers made a similar statement, and Mahmoud had filed a

3  grievance against Summers for prison conditions two months earlier.  But Mahmoud does not

4  allege any facts connecting Lara's or Albert's alleged conduct to any grievance.

5       Mahmoud does not allege that defendants' conduct would have a chilling effect.  But a

6  plaintiff can satisfy the fourth element if he "suffered some other harm that is more than

7  minimal."[71]  Mahmoud's allegations that defendants physically injured him are enough for

8  screening purposes to satisfy the fourth factor.  And Mahmoud's allegations that all he did was

9  ask to use the bathroom and for a prison staff member's name to file a grievance about him is

10 enough to show that the conduct was not necessary to maintain order at SDCC.

11      These allegations are not enough to state a colorable First Amendment retaliation claim

12 against Lara or Albert, but they are sufficient for screening purposes to state a colorable claim

13 against John Doe 2, Summers, and Ashley.  Although the use of "Doe" to identify a defendant is

14 not favored, flexibility is allowed in some cases where the identity of the parties will not be

15 known before filing a complaint but can subsequently be determined through discovery.[72]  So

16 this claim can proceed against only Summers and Ashley now, and it can proceed against John

17 Doe 2 once Mahmoud learns the true name of that defendant through discovery and obtains leave

18 of court to substitute him in this action.

19      **D.    Eighth Amendment use of excessive force**

20      When prison officials are accused of using excessive physical force in violation of the

21 cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether

22 force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

23 sadistically for the purpose of causing harm.[73]  In determining whether the use of force was

24 wanton and unnecessary, it may also be proper to consider factors like the need to apply force,

25

---

26  [71] *Watison*, 668 F.3d at 1114.

27  [72] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

28  [73] *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.[74] Although a prisoner does not need to have a suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force.[75]

Mahmoud alleges that John Doe 2 punched him in the face and kicked him when he was on the ground. Mahmoud was handcuffed at the time and being escorted by three correctional officers including John Doe 2. Mahmoud does not allege that he was resisting or noncompliant. The conduct allegedly occurred because Mahmoud asked for John Doe 2's name to file a grievance after he denied Mahmoud's request to use the bathroom in the dining hall. I find that these allegations are enough for screening purposes to state a colorable Eighth Amendment excessive-force claim against John Doe 2. This claim can proceed against John Doe 2 once Mahmoud learns the true name of that defendant through discovery and obtains leave of court to substitute him in this action.

### E.    Eighth Amendment deliberate medical indifference

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."[76] A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[77] "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[78]

---

[74] *Id.* at 7.

[75] *Id.* at 9–10.

[76] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation omitted).

[77] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

[78] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082–83 (9th Cir. 2014).

1    To establish the first prong, "the plaintiff must show a serious medical need by

2 demonstrating that failure to treat a prisoner's condition could result in further significant injury

3 or the unnecessary and wanton infliction of pain."[79]  To satisfy the deliberate-indifference prong,

4 a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible

5 medical need and (b) harm caused by the indifference."[80]  "Indifference may appear when prison

6 officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the

7 way in which prison physicians provide medical care."[81]

8    Based on the allegations, Albert did not allow Mahmoud to use the bathroom but said to

9 wait until the medical examination was done.  Albert then left Mahmoud alone for 30 minutes

10 without examining him.  The pain from holding urine became so great that Mahmoud urinated on

11 himself.  Mahmoud contends that Albert was aware of his diabetic condition and therefore his

12 need to frequently urinate.  But he pleads no facts to support that conclusion.  Mahmoud also

13 alleges that Albert looked at his minor injuries from John Doe 2's alleged beating and

14 pronounced him to be "fine."  Mahmoud does not allege that he suffered harm from the lack of

15 further medical attention for those injuries.  And Mahmoud vaguely alleges that he filed

16 grievances about medical staff not getting him X-rays, a blood test, and cough medicine.

17    I do not find that these allegations are enough to state a colorable claim that Mahmoud

18 had a serious medical need to have the minor injuries he sustained on February 16 treated.  Nor

19 are the allegations enough to show that that Albert was aware that Mahmoud had a serious

20 medical need to use the bathroom every 30 minutes and consciously disregarded that risk.  And

21 the thin facts that Mahmoud alleges about his need for X-rays, a blood test, and cough medicine

22 are not enough to meet either prong of the Eight Amendment analysis.  So the Eighth

23 Amendment deliberate-medical-indifference claim is dismissed without prejudice.

24

25

26
---
[79] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotations omitted).

27 [80] *Id.*

28 [81] *Id.*

### F.    Eighth Amendment unsafe prison conditions

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.[82]  The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[83]  The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care.[84]

To challenge conditions of confinement under the Eighth Amendment, a plaintiff must meet a two-part test with an objective prong and a subjective one.[85]  The objective prong requires a "showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation."[86]  And the subjective prong requires a prisoner to show that prison officials were deliberately indifferent to the challenged condition of confinement.[87]

To show that a prison official was deliberately indifferent to a condition of confinement, the prisoner must allege true facts that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[88]  Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.[89]

### 1.    Exposure to cold

Mahmoud alleges that Summers forced him and other diabetic prisoners to wait outside for up to 30 minutes in freezing weather to get insulin from the infirmary early every morning. These allegations fall short of showing that Mahmoud was exposed to a "substantial risk of

---

[82] *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer*, 511 U.S. at 832.

[83] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

[84] *Farmer*, 511 U.S. at 832.

[85] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

[86] *Id.*

[87] *Cf. Farmer*, 511 U.S. at 834 (concerning threats to safety).

[88] *Id.* at 837.

[89] *Id.* at 843.

serious harm."[90]  For example, Mahmoud does not allege what clothing he wore during the wait.

Nor does he allege how often he is exposed to this condition, like how many days the

temperature is freezing at SDCC.  Mahmoud also does not allege that his condition makes him

more sensitive to cold.  So the Eighth Amendment unsafe-prison-conditions claim by exposure to

cold is dismissed without prejudice.

### 2.    Verbal harassment

Verbal harassment or abuse "generally does not violate the Eighth Amendment."[91]  To

state a colorable claim for verbal harassment or abuse, a plaintiff must allege true facts that the

comments "were unusually gross even for a prison setting and were calculated to and did cause

him psychological damage."[92]  Based on the allegations, John Doe 2 called Mahmoud a

motherfucker and a bitch and Ashley called him a big slut.  Although disrespectful and insulting,

these comments are not unusually gross, and Mahmoud does not allege that the comments were

calculated to and did cause him psychological damage.  The Eighth Amendment claim

challenging the condition of verbal abuse is therefore dismissed without prejudice.

### G.    Supervisory liability for retaliation and excessive force

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

participation by the defendant."[93]  "A supervisor is only liable for constitutional violations of his

subordinates if the supervisor participated in or directed the violations[ ] or knew of the

violations and failed to act to prevent them.  There is no respondeat superior liability under

[§]1983."[94]  "A showing that a supervisor acted, or failed to act, in a manner that was

deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the

---

[90] *Id.* at 825.

[91] *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (citing *Oltarzewski v. Ruggiero*, 820 F.2d 136, 139 (9th Cir. 1987)).

[92] *Id.*

[93] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[94] *Id.*; *see also Iqbal*, 556 U.S. at 676 (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

1  involvement—and the liability—of that supervisor."[95]  So "a plaintiff may state a claim against a

2  supervisor for deliberate indifference based upon the supervisor's knowledge of and

3  acquiescence in unconstitutional conduct by his or her subordinates."[96]

4       To state a claim that a supervisor is responsible for constitutional violations because he

5  failed to properly train or supervise a subordinate, the plaintiff must plead facts to show that the

6  supervisor's "failure to train [or supervise] amounted to deliberate indifference."[97]  For that

7  theory, a plaintiff must allege facts that "in light of the duties assigned to specific officers or

8  employees, the need for more or different training is obvious, and the inadequacy so likely to

9  result in violations of constitutional rights, that the policy-makers can reasonably be said to have

10  been deliberate indifferent to the need."[98]  The plaintiff must also show that the inadequate

11  training or supervision was the product "of a 'deliberate' or 'conscious' choice on the part of [the

12  supervisor]."[99]

13       Mahmoud alleges that his First and Eighth Amendment rights were violated because

14  Sisolak failed to provide SDCC with enough security cameras and did not adequately hire, train,

15  or supervise prison staff and Daniels "gave the orders to wardens, supervisors, staff to attack"

16  Mahmoud.[100]  Mahmoud also alleges that Ford knew about the "daily brutality and corruption in

17  all NDOC institution[s]" and protected bad prison staff by giving them immunity.[101]  Howell

18  "gave the green light to his supervisors and officers and medical staff to retaliate" against and

19  attack Mahmoud,[102] and Hutchings did not adequately hire, train, or supervise prison staff.

20

21

---

22  [95] *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

23  [96] *Id.; accord OSU Student All. v. Ray*, 699 F.3d 1053, 1075 (9th Cir. 2012) (concerning free-speech claims).

24  [97] *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998).

25  [98] *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

26  [99] *Canell*, 143 F.3d at 1214.

     [100] ECF No. 1-1 at 5.

27  [101] *Id.* at 6.

28  [102] *Id.*

1   But Mahmoud's allegations are merely boilerplate conclusions, and he pleads no facts to

2   support any of them.  These allegations are not enough to show that any defendant is liable in a

3   supervisory capacity for any alleged constitutional violation.  So the supervisory liability claims

4   for retaliation, deliberate indifference, and excessive force are therefore dismissed without

5   prejudice.

6   **V.    Motion to appoint counsel**

7   Like many prisoners who file civil-rights claims, Mahmoud asks the court to find and

8   appoint him a free lawyer.[103]  A litigant does not have a constitutional right to appointed counsel

9   in 42 U.S.C. § 1983 civil-rights claims.[104]  The statute that governs this type of litigation, 28

10  U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person

11  unable to afford counsel."  However, the Court will appoint counsel for indigent civil litigants

12  only in "exceptional circumstances."[105]  "When determining whether 'exceptional

13  circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the

14  ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues

15  involved."[106]  "Neither of these considerations is dispositive and instead must be viewed

16  together."[107]

17  Mahmoud argues that he needs an attorney because English is not his first language and

18  he is not legally trained.  Mahmoud has demonstrated the ability to articulate his claims.  And

19  although Mahmoud has stated some colorable claims for relief, serious questions exist about

20  whether many of them are futile because he has exhausted his available administrative remedies.

21  I do not find that exceptional circumstances exist under these circumstances.  I therefore deny the

22  motion to appoint counsel.

23

24

---

25  [103] ECF No. 4.

26  [104] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

    [105] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

27  [106] *Id.*

28  [107] *Id.*

## VI.    Motion for pretrial equitable relief

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."[108] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[109] Furthermore, under the PLRA, preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm."[110]

Mahmoud moves on an emergency basis for a temporary restraining order and preliminary injunction requiring defendants to stop "any physical or mental harm of violence and threats and harassment against" him and his witnesses, including destroying their personal property, falsely writing them up for violations, retaliation, and discrimination.[111] The only *Winter* factor that Mahmoud expressly addresses is irreparable harm. Mahmoud argues that he was convicted of false disciplinary charges after the incident on February 16.[112] As a result, he was sent to segregation for six months and lost personal property like an electric fan.[113] But Mahmoud does not provide any information about the charge other than it was "false" and subsequent hearing other than it was "illegal" and retaliatory.[114] Nor does he allege any claims about the charges, due-process hearing, or lost personal property in this action. "A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."[115]

---

[108] *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).

[109] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

[110] 18 U.S.C. § 3626(a)(2).

[111] ECF No. 18; *accord* ECF Nos. 22, 23.

[112] ECF No. 22 at 1.

[113] *Id.* at 1–2.

[114] *See id.*

[115] *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

1    Mahmoud also provides a declaration from a prisoner who claims that he witnessed

2  prison staff doing things like refusing to provide Mahmoud his sack meals, products to clean his

3  cell, and emergency-grievance forms.[116]  The witness further alleges that staff twice denied

4  Mahmoud time outside: once when he was praying and again when was on the phone.  Staff

5  members make fun of Mahmoud when he prays and call him names like Saddam Hussein and

6  Osama bin Laden.[117]  But the information provided is incomplete.  For example, neither

7  Mahmoud nor his witness provide facts about which defendants, if any, engaged in this alleged

8  conduct or when any of it occurred.

9    Mahmoud's witness also alleges that Sergeant Navarrete, whom Mahmoud does not sue

10  but could be the person he calls John Doe 2, beat him up and falsely wrote him up on charges

11  that led to him being segregated for six months.[118]  But that allegedly occurred in October 2021.

12  Neither the witness nor Mahmoud make any effort to connect Navarrete's alleged conduct to this

13  action.[119]

14    I find that Mahmoud has shown that there are serious questions going to the merits of his

15  retaliation and excessive force claims.  But I am not satisfied that Mahmoud or any of his

16  witnesses are likely to be harmed or retaliated against by any defendant unless I enter an order

17  prohibiting such conduct.  Restraining orders and injunctive relief are extraordinary remedies.

18  The test for either remedy requires satisfaction of all four *Winter* factors.  The failure to satisfy

19  any one factor—as Mahmoud has failed to demonstrate all but one here—requires denying his

20  motions for a restraining order and a preliminary injunction.

21  **VII.    Conclusion**

22    IT IS THEREFORE ORDERED that the motion to compel **(ECF No. 6) is DENIED as**

23  **moot**.

24

25

_____

26  [116] ECF No. 22 at 7–8.

27  [117] *Id.* at 8.

28  [118] *Id.*

[119] *Id.*

IT IS FURTHER ORDERED that:

- The First Amendment retaliation claim **CAN PROCEED** against only Summers and Ashley, and it can proceed against John Doe 2 once Mahmoud learns that person's true name through discovery and obtains leave of court to substitute him as a defendant in this action;

- The Eighth Amendment excessive force claim **CAN PROCEED** against only John Doe 2 once Mahmoud learns that person's true name through discovery and obtains leave of court to substitute him as a defendant in this action;

- The Eighth Amendment deliberate medical indifference claim is **DISMISSED without prejudice**;

- The Eighth Amendment claim for unsafe prison conditions by exposure to cold is **DISMISSED without prejudice**;

- The Eighth Amendment claim for unsafe prison conditions by verbal harassment is **DISMISSED without prejudice**; and

- The supervisory liability claims for retaliation, excessive force, and deliberate indifference are **DISMISSED without prejudice**.

IT IS FURTHER ORDERED that defendants Steve Sisolak, Aaron Ford, Charles Daniels, Jerry Howell, William Hutchings, Lara, and Albert are **DISMISSED from the complaint without prejudice**, and the Clerk of Court is directed to TERMINATE them as defendants in this action.

IT IS FURTHER ORDERED that the motion to appoint counsel **(ECF No. 4) is DENIED**.

IT IS FURTHER ORDERED that the motions for a temporary restraining order and a preliminary injunction **(ECF Nos. 18, 22, 23) are DENIED**.

Given the nature of the claims that the court has permitted to proceed, IT IS FURTHER ORDERED that this action is stayed for 90 days to allow Mahmoud and defendants an opportunity to settle their dispute before the $350 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the Court lifts the stay, no

1 other pleadings or papers may be filed in this case, and the parties will not engage in any

2 discovery, nor are the parties required to respond to any paper filed in violation of the stay unless

3 specifically ordered by the Court to do so.  The court will refer this case to the Inmate Early

4 Mediation Program, and it will enter a subsequent order about that matter.  Regardless, on or

5 before 90 days from the date this order is entered, the Office of the Attorney General will

6 complete and file the report attached to this order regarding the results of the 90-day stay, even if

7 a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed

8 with this action, the court will then issue an order setting a date for defendants to file an answer

9 or other response.  Following the filing of an answer, the court will issue a scheduling order

10 setting discovery and dispositive motion deadlines.

11      "Settlement" may or may not include payment of money damages.  It also may or may

12 not include an agreement to resolve Mahmoud's issues differently.  A compromise agreement is

13 one in which neither party is completely satisfied with the result, but both have given something

14 up and both have obtained something in return.

15      If the case does not settle, Mahmoud will be required to pay the full $350 statutory filing

16 fee for a civil action.  This fee cannot be waived, and the fee cannot be refunded once the court

17 enters an order granting his application to proceed *in forma pauperis*.  If Mahmoud is allowed to

18 proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account.  *See*

19 28 U.S.C. § 1915(b).  If Mahmoud is not allowed to proceed *in forma pauperis*, the full $350

20 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will

21 be due immediately.

22      IT IS FURTHER ORDERED that if any party seeks to have this case excluded from the

23 inmate mediation program, that party must file a "motion to exclude case from mediation" no

24 later than 21 days before the date set for mediation.  The responding party will have 7 days to file

25 a response.  No reply will be permitted.  Thereafter, the Court will issue an order, set the matter

26 for hearing, or both.

27

28

IT IS FURTHER ORDERED that if Mahmoud needs a translator to participate in the mediation program, he must file a notice identifying the translation language and the need for the translator within 30 days from the date of this order.

IT IS FURTHER ORDERED that the Attorney General's Office must advise the court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of defendants for the purpose of settlement.  No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

Finally, **the Clerk of the Court is directed to:**

- **Add** Summers, Ashley, Lara, and Albert to the docket as defendants.  Consistent with my order above dismissing Lara and Albert from the complaint without prejudice, the docket should reflect that they were **terminated as parties** by this order;

- **File** the complaint (ECF No. 1-1) and **send** Mahmoud a courtesy copy of it; and

- **Electronically serve** a copy of this order and a copy of the complaint on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service.

Dated: May 2, 2022

_____
U.S. District Judge Jennifer A. Dorsey

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Mohamed A. Mahmoud,<br><br>                    Plaintiff<br><br>    v.<br><br>Steve Sisolak, et al.,<br><br>                    Defendants | Case No. 2:22-cv-00368-JAD-VCF<br><br>REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |

**THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS REPORT.  THE INMATE PLAINTIFF MAY NOT FILE THIS REPORT.**

On May 2, 2022, the court issued its screening order under 28 U.S.C. § 1915A.  The court allowed some claims to proceed, ordered mediation, and ordered the Office of the Attorney General of the State of Nevada (Attorney General) to file a report in 90 days stating the status of this case.  The Attorney General complies with the court's order by filing this form, which asks it to identify which of the two situations listed below describes this case and mark the appropriate case-status statement.

**I.    Situation One—Mediated case**

This case was assigned to mediation by a court-appointed mediator during the 90-day stay and [mark the applicable statement below]:

_____    A mediation session was held on _____, and as of today, the parties have reached a settlement.  *Mark here even if paperwork to memorialize the settlement isn't complete.  If checked, the parties are on notice that they must SEPARATELY but contemporaneously file either a stipulation of dismissal or a motion to continue the stay until a specified date when they will file a stipulation for dismissal.*

_____    A mediation session was held on _____, and as of today, the parties have not reached a settlement.  The Attorney General intends to proceed with this action.

_____    No mediation session was held during the 90-day stay, but the parties have nevertheless settled the case.  *If marked, the parties are on notice that they must SEPARATELY but contemporaneously file either a stipulation of dismissal or a motion to continue the stay until a specified date when they will file a stipulation for dismissal.*

_____    No mediation session was held during the 90-day stay, but one is currently scheduled for _____.

_____    No mediation session was held during the 90-day stay, and as of today, no date certain has been scheduled for such a session.

_____    None of the above five statements describe the status of this case. Contemporaneously with the filing of this report, the Attorney General will file a separate document detailing the status of this case.

**II.    Situation Two—Informal settlement discussion case**

The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations and [mark the applicable statement below]:

_____    The parties engaged in settlement discussions and as of today, have reached a settlement. *Mark here even if paperwork to memorialize the settlement isn't complete. If marked, the parties are on notice that they must SEPARATELY but contemporaneously file either a stipulation of dismissal or a motion to continue the stay until a specified date when they will file a stipulation for dismissal.*

_____    The parties engaged in settlement discussions and as of today, have not reached a settlement. The Attorney General intends to proceed with this action.

_____    The parties have not engaged in settlement discussions and as of today, have not reached a settlement. The Attorney General intends to proceed with this action.

_____    None of the above three statements fully describe the status of this case. Contemporaneously with the filing of this report, the Attorney General will file a separate document detailing the status of this case.

Submitted this \_\_\_\_ day of _____, _____, by:

Attorney: _____    Signature: _____

Address: _____

Email: _____    Phone: _____